

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 2, 1960

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-955

Re: Disposition of fees
collected for water used
in measuring tanks or
containers of vehicles
transporting taxable motor
fuels.

Dear Mr. Calvert:

As your recent letter requesting our opinion upon the
referenced question sets out certain pertinent facts and
provisions bearing upon the situation, we quote it in full
as follows:

"Article 9.19 of the Motor Fuel Tax Law - Chapter
9, House Bill 11, 3rd Called Session of the 56th
Legislature, requires the Comptroller to test,
measure and mark the correct capacity of every
vehicle tank, and every compartment thereof, which
is used in transporting taxable motor fuels, blend-
ing materials and other taxable liquid fuels in
Texas. (The taxes are paid to the State on the
capacities so determined and marked on said tanks.)

"The Bureau of Standards, U. S. Department of
Commerce recommends the use of water as the most
accurate medium of measuring the capacities of
such vehicle tanks, and water is used in the State
measuring racks or stations, eight (8) of which
have been established and are in operation over
the State. This Article - 19.19 (1) - carries
the following provisions:

'The owner of any vehicle tank or
other container tested and measured may
be required to pay a reasonable fee
to any city or any person for water used
in the measurement of such tank or con-
tainer.'

"Except at the measuring rack located on city pro-
perty at Arlington, Texas, where the city collects
for the water used directly from the vehicle tank
owners, it has been necessary for the Comptroller's

rack supervisors to collect such water charges
for the account of such cities and such collec-
tions have been turned over to the City Water
Department for which receipts of payment have
been secured.  When the collections exceeded
the amount due at the fixed rates per thousand
gallons charged by most of the cities - which
often happens when collections are made on
fractions of a thousand gallons used - the excess
funds were mailed in to the Austin Office and
deposited by the Comptroller to the same funds to
which motor fuel tax collections are allocated.

"The question has now arisen as to whether the
Comptroller may be precluded by provisions of the
Constitution or by the laws of this State from
collecting funds for the account of the cities
in payment of water used in such measuring operations
without depositing the funds so collected in the
State Treasury and remitting to the cities by
State warrant for the payment of the water bills
accruing.

"In the absence of any statutory allocation of
such collections, the Comptroller could not be
reimbursed for the payment of such water bills
which obviously would have to be paid out of the
Comptroller's appropriation for miscellaneous
operating expense and contingencies.

"Our first two-fold question is therefore as
follows:

"(a)  Is the Comptroller required by
law or Constitutional prescription to
deposit in the State Treasury any funds
collected by his employees as a water bill
for the account of a city selling such water
as above described?  Or (b) may such employees
act as an agency or collecting medium for
such cities by collecting and paying over to
them such water charges without channelling
such payments through the State Treasury?

"If you should find that the Comptroller's actions
in collecting water charges and paying such collections
over to the cities is barred only by lack of statutory
authority or sanction, will a rule and regulation
authorizing such procedure promulgated under the power

specifically conferred upon the Comptroller by
Article 9.19, above cited, validate such actions?
For ready reference this provision reads as follows:
'The Comptroller is hereby given the power and
authority to promulgate and enforce any rules and
regulations, which he may deem necessary to the
best enforcement of the provisions of this Article.'"

We answer your first question as follows:

> (a) The Comptroller is not required by law
> or constitutional prescription to deposit
> in the State Treasury funds collected
> by his employees as a water bill for the
> account of a city selling such water, as
> described;

> (b) such employees may act as collectors
> for such cities by collecting and paying
> over to them such water charges without
> channelling such payments through the
> State Treasury.

It is obvious from the above quoted language of Art. 9.19
(1) of the Motor Fuel Tax Law, that the Legislature intended
that the actual costs of water used in measuring vehicle tanks
or other containers used to transport taxable liquid fuels
should be paid by the owner of such tanks. The failure to
provide specific machinery for so doing in no way changes the
purpose of this provision. The fee paid under this Section by
the owner of the tank or container measured is paid to the
"City or other person" furnishing the water used in measurement.
The phrase "or other person" obviously refers to any supplier
of water other than a city. The fee provided does not belong
to the State of Texas; the State as such can normally have no
interest it it. The owner of the tank or container is responsible
directly to the city (or other person) supplying the water for a
fee. The only conceivable instance in which the State itself
could have a claim upon the fee is in the event State-owned water
was used in the measuring process. It would then become the "other
person" supplying the water. In the situation you describe,
however, no such question is presented.

From the facts you set out, it is apparent that the Comp-
troller's employees have been acting as de facto agents of the
cities involved in collecting these fees. We assume that no
compensation has been paid these employees by the cities for
their services. We also understand from conferences with you
that in each case a receipt is given the owner of the tank (or,
more usually, the driver of the transport vehicle) indicating

the fee collected, at the time he is given his copy of the official measurement certificate. A receipt is then obtained from the city or other supplier when the fee is turned over to it. Copies of both receipts are then forwarded to your Austin Office.

The practicality of this method of collection is obvious when contrasted with the impracticality of requiring the vehicle driver to leave his truck at the measuring rack, which we understand is invariably located well away from the heart of each city, travel to the water department office, pay the required fee, then return to the measuring rack for his vehicle and measurement certificate. The only other alternative would be for the city itself to station its own employee at the rack to make such collections. Such an arrangement would of course eliminate any question of agency, but the city can certainly not be put under obligation to station an employee at this post.

It is obvious that any supplier could at any time refuse to make water available for measurement purposes, should the proper fee not be paid over to it. This would make it impossible to carry out the measurement process contemplated by Art. 9.19, Title 122-A, R.C.S., which is an integral part of the system of motor fuel taxation under Chapter 9 of Title 122-A. As you point out, Art. 9.19 empowers the Comptroller to promulgate any rule or regulation which may be necessary for enforement of its provisions. It is our opinion that no statutory, Constitutional, or other impediment exists which would prevent such a rule or regulation permitting employees of that office to act as collecting agents for cities or other water suppliers, assuming, of course, the city or supplier designates him as agent for this purpose.

However, we are of the further opinion that all fees collected in this connection should be turned over to the city or other supplier of water, including any over-payments which occur. As pointed out above, the State of Texas has no claim whatsoever to any part of these fees; therefore, the deposit of any portion of them to the funds to which motor fuel tax collections are allocated, the General Fund, or any other State fund would be erroneous.

## S U M M A R Y

Fees paid by or on behalf of owners of
motor fuel tanks or containers for water used
in measuring such tanks or containers, as pro-
vided in Art. 9.19, Title 122-A, R.C.S., should

not be deposited in the State Treasury. Under a rule or regulation of the Comptroller of Public Accounts, employees of that office may act as Agents, when duly appointed, of the City, or other supplier of water in collecting and turning over such fees, without channelling such payments through the State Treasury.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: James R. Irion
James R. Irion
Assistant

JRI:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

William Hemphill
Thomas Burrus
Lawrence Hargrove

REVIEWED FOR THE ATTORNEY GENERAL

By:  Leonard Passmore